IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | NO. 3:21-CR-00236-E |
| | § | |
| WILLIAM ROY STONE, JR (1) | § | |

### DEFENDANT STONE'S MOTION TO EXCLUDE GOVERNMENT'S RULE 404(b) WITNESSES

William Roy Stone, Jr. ("*Stone*") respectfully files the following Motion to Exclude Government's Rule 404(b) Witnesses. In support thereof, Stone presents the following:

### INTRODUCTION

On January 18, 2023, Stone filed a Motion for Disclosure of Extraneous Acts. *Dkt.* 69. On February 8, 2023, the government filed its Notice of 404b Evidence. *Dkt.* 76. Though the motion is numbered through twelve, it appears that the government intends to call eleven witnesses to provide inadmissible, inflammatory, and inappropriate testimony of Stone's Character. Any statements that Stone allegedly told the government's 404(b) witnesses about his personal or professional life are totally unrelated to the issues in this case. The Agent in this case spent an absurd amount of time tracking down any woman that Stone had a relationship with over the last two decades. A handful of these women only met Stone *after* he and C.T. ended their engagement in July 2019. These women have no factual knowledge of any of the allegations, no factual knowledge of C.T., and add zero evidentiary value to the charges in this case. For that reason, any testimony from these witnesses is in violation of Rule 401 as it is irrelevant to the charges in this case.

The government has failed in its quest to identify another victim – someone who was allegedly defrauded by Stone of money and property like C.T claims to have been. Despite

interviewing over a dozen women (that Stone is aware of), the government has failed to find any woman who would say that Stone created a scheme or artifice to defraud them out of money or property. Even in light of that, the government still wants to put these women on the stand promising it will show "motive, opportunity, intent, preparation, plan, knowledge, and absence of mistake." However, it is clear that the only reason the government is calling eight former girlfriends is to obliterate Stone's character during a criminal trial in violation of the Federal Rules of Evidence.

Allowing the government to parade woman after woman onto the witness stand defies common sense. Most, if not all, romantic relationships end for a multitude of reasons – rarely good. After a relationship ends, most people never want to see or speak with those individuals ever again. Allowing women from Stone's failed relationships to testify in a criminal matter that has nothing to do with them, in front of the jury, blatantly violates Rule 404 of the Federal Rules of Evidence. If the Court determines that the testimony from Stone's failed relationships is relevant and somehow passes muster under the Rule 404 analysis, the admission of this testimony would be in violation of Rule 403 as its potential probative value is substantially outweighed by unfair prejudice to Stone. This evidence will confuse the issues, mislead the jury, cause undue delay, waste the Court's time, and lead to needlessly cumulative evidence. Fed. R. Evid. 403. Stone is not on trial for being a bad boyfriend. Stone is on trial for allegations that he defrauded C.T. and the testimony should be limited to such. Stone requests that the Court prohibit the irrelevant, inflammatory, inadmissible, and cumulative testimony from women in Stone's past relationships and the others articulated in the government's notice for the same reasons.

## AUTHORITY AND ANALYSIS

"Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait" Fed. R. Evid. 404(a)(1). "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, in a criminal case, evidence may be admissible for proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Fed. R. Evid. 404(b)(2). Evidence should not be admitted for the sole purpose of demonstrating the defendant's bad character. *United States v. Beechum*, 582 F.2d 898, 910 (5th Cir. 1978). "Even though such evidence is relevant, because a man of bad character is more likely to commit a crime than one not, the principle prohibits such evidence because it is inherently prejudicial." *United States v. Beechum*, 582 F.2d 898, 910 (5th Cir. 1978) (*citing Michelson v. United States*, 335 U.S. 469, 475-76 (1948)).

In order to be admissible, extrinsic offenses must go through the well-established two-prong test. *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978). "Extrinsic offense evidence is properly admitted under Rule 404(b) only if: (1) it is relevant to an issue other than the defendant's character, and (2) its probative value is not substantially outweighed by its undue prejudice." *United States v. Buchanan*, 70 F.3d 818, 830 (5th Cir. 1995) (*citing United States v. Ponce*, 8 F.3d 989, 993 (5th Cir. 1993); *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978)). "Evidence is relevant 'if it makes the existence of any fact or issue more or less probable than it would be without the evidence.'" *Buchanan*, 582 F.2d at 830 (*quoting United States v. Williams*, 900 F.2d 823, 826 (5th Cir. 1990)). Additionally, when looking at the probative value,

the analysis "hinges upon the government's need for the testimony..." *United States v. Henthorn*, 815 F.2d 304, 308 (5th Cir. 1987).

Based on the number of ex-girlfriends the government intends to call, eight in total, it's clear the purpose is to have all these women get on the witness stand to merely say "Stone lied to me too!" Stone is not on trial for being a bad boyfriend, for infidelity, or for lying to women. He's charged with defrauding C.T. into thinking she was on fictitious probation and posing as an active FBI agent in order to defraud C.T. out of money and property.

I. *Adrianna Moreno – sexual relationship*

The government attempts to use Adrianna Moreno ("Adrianna") to show that Stone and DeLeon conspired against Adrianna—not to commit a crime, but to help with her immigration status. The government, in its 404 (b) notice, alleges that DeLeon told Adrianna that Stone was an FBI agent.

Stone and Adrianna had a sexual relationship and exchanged flirty text messages. The government concedes in its MOI that none of the text messages between Stone and Adrianna contained evidence of the allegation that Stone mislead Adrianna about anything immigration-related. After a review of the messages, it turns out that there were no text messages about immigration **at all**. The only messages between Stone and Adrianna were nothing more than flirty pillow talk messages back and forth. At no point in time did Stone tell Adrianna she had pending charges, was on probation, nor did he defraud her out of money or property. The only allegation from the government is that Stone offered Adrianna assistance with her legal immigration status. This testimony should be excluded.

II. *Gloria Hernandez – sexual relationship*

The government took several liberties in twisting the words of Gloria Hernandez ("Gloria"). The government provides examples of what it believes to be lies that Stone told Gloria, such as his birthday, where he lived, what he did for work, and his family life. The government further claims that Stone would tell Gloria he was lacking money because he had to fund his children's education and as such, Gloria would routinely give him whatever money she had when they met. That statement is a drastic embellishment of what Gloria *actually* said (Gloria states that Stone never asked her for money but said she would give him "like $20" to get something to eat on his way back sometimes). If a defendant telling someone he or she is tight on money is enough to show motive, opportunity, intent, preparation, plan, knowledge, and/or absence of mistake[1] for wire fraud, then the government has a very low threshold and would use this extrinsic evidence in every wire fraud case.

Gloria confirmed that she doesn't know C.T. and has never heard of her. Stone never told Gloria she was on fake probation or had any pending charges against her. Gloria believes Stone retired from the FBI around 2005 or 2006. Gloria stated that Stone told her he was in the CIA—but he never used his position, whether real or not, to obtain any money or property from Gloria, as he's being charged in this case. The government wants to put Gloria on the stand to show that Stone was unfaithful, lied about his birthday, lied about where his kids go to school, etc. to show that Stone is a bad guy and nothing more.

Even if the Court were to determine that Gloria's testimony is relevant, it fails under the two-prong test for admissibility under Rule 404(b). Prong One: is the testimony relevant to an issue *other than the defendant's character*? Stone is unable to understand how Gloria's testimony

---

[1] The government merely provided a blanket statement that the witnesses were being offered to prove motive, opportunity, intent, preparation, plan, knowledge, and absence of mistake without specifically delineating which examples apply to which witnesses.

would go to motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake. Prong Two: is the probative value substantially outweighed by its undue prejudice? Absolutely not. The government intends to put Gloria on the stand so that she can expose all the lies she discovered during the course of their romantic relationship in order to enrage the jury. This testimony should be excluded.

### III.  Stacy Barbara – sexual relationship

Stacy Barbara ("Stacy") was a former probation officer that met Stone on Match.com well after C.T. ended the engagement with Stone. The two dated for just under one year. At the beginning of their relationship, Stone told Stacy he was retired FBI. Stone embellished facts about his former work life in an attempt to impress Stacy, though she states she never believed his stories. In 2020, Stacy and Stone went on vacation together in Mexico where Stacy discovered Stone was texting with other women and told him to leave. Stone never told Stacy he was an active FBI agent, Stone never told Stacy she had pending charges or a super secret probation, and Stone never asked for nor defrauded Stacy of any money or property. This testimony should be excluded.

### IV.  Kimberly Klodowski – dating relationship

Stone met Kimberly Klodowski ("Kimberly") through a dating application in July 2019—after C.T. ended the engagement with Stone. Stone embellished his work experiences in a failed attempt to impress Kimberly—but instead, she just felt like he was lying to her and had a law enforcement friend look into him. Stone told Kimberly he was currently employed through private contracts with the U.S. Government but at no time did he tell Kimberly she had any pending charges or probation, nor did he ask for money or defraud her out of money or property. Additionally, Stone told Kimberly he was retired FBI. Any testimony from Kimberly is irrelevant to this case and for the sole purpose of painting Stone as a liar. This testimony should be excluded.

V.      *Donna Oscarson – dating relationship*

Donna Oscarson ("Donna") and Stone met through Match.com in September 2019—roughly two months after C.T. ended the engagement with Stone. Stone told Donna he was retired FBI. According to the government, Stone told Donna he was former secret service, worked on the Baylor University sexual assault case, and also said he was a special agent with an unidentified U.S. agency. Stone never told Donna she had pending charges or a super secret probation and he never asked for nor defrauded Donna out of money or property. Donna's testimony has no relevance and no probative value to the present case. This testimony should be excluded.

VI.     *Julie Allen – long dating relationship*

The entire relationship with Julie Allen ("Julie") ended in 2015. The government believes that Stone's negative feelings toward his ex-wife and the divorce settlement are evidence of admissible extrinsic evidence. Further, the government alleges that "Stone did not tell [Julie] he had retired from the FBI" upon his return from Washington, D.C. in 2015 However, the government does not allege that he held himself out as active FBI in order to defraud Julie. This is another failed attempt at putting on a former flame of Stone to air out relationship baggage on the witness stand. This testimony should be excluded.

VII.    *Amber Clayton – brief encounter*

Amber Clayton ("Amber") met Stone one time at an IHop with DeLeon. Amber claims that Stone offered to discuss a forgery scheme at Amber's work as well as Amber's disputed employment forms. Stone allegedly looked through the documents Amber brought and claimed to be on a phone call discussing the documents. Stone told Amber that her boss was already flagged and under investigation. Clayton did not see or speak with Stone after that meeting. Stone did not ask Amber for any money nor did he defraud her of any money or property. Stone did not tell

Amber she had pending charges or a super secret probation and he did not make any promises to keep her out of jail. This testimony should be excluded.

    VIII.    *Dena Kimbrell – sexual relationship*

Stone had a sexual relationship with Dena Kimbrell for less than a year. During that time, Stone never invited Dena to his house, which she found weird. She even suspected Stone was seeing other women because he told her he was in Australia but she didn't believe him. After some online sleuthing, she discovered his home address and went to his house to surveil him. When she saw him leave in his truck, she called him and asked if he was really in Australia. He said he was and asked why she was asking. Dena never confronted Stone about this incident. Shortly thereafter, Stone told Dena he had to leave town for special assignment and would call when he returned two weeks later. Stone never called Dena. Now, the government wants to put Dena on the stand to tell the jury what a bad guy Stone is. Stone told Dena he was retired FBI. Stone never defrauded Dena of money or property and Stone never told Dena she had charges or a super secret probation against her. This testimony should be excluded.

    IX.    *Mary Leanne Bryan – dating relationship*

Mary Leanne Bryan ("Leanne") met Stone online in August 2019. They drank and she didn't like him. The government believes testimony from Leanne is relevant because Stone introduced himself as "Liam" and claimed to be on the phone with a colleague who is connected to attorneys in Ft. Worth that could assist Leanne with probating her husband's estate. Stone is baffled at how using a part of his legal name and claiming to know probate attorneys would be extrinsic evidence to the charged crimes of: 1) fake probation in order to obtain money or property; and 2) impersonating an FBI agent in order to obtain documents, money, or property. Leanne makes no claim that Stone held out as active FBI, makes no allegation of him defrauding her of

money or property, and Stone does not tell her she has pending charges or a super secret probation against her. This testimony should be excluded.

      X.     *Jonathan Perez and Timothy Bell – workplace dispute*

The government would like to call Mr. Perez and Mr. Bell to again tell the jury about Stone telling lies. Stone told Perez he was going to make some calls to help get him a job with the FBI. Stone then told Perez he was making calls on his behalf. However, Mr. Perez later discovered Stone did not make the alleged calls and reported the incident to Mr. Bell, Stone's supervisor at the FBI. Stone admitted that he did not make any calls on Mr. Perez's behalf.

Stone is not charged with making fake phone calls in this case. He is charged with conspiracy, wire fraud, and impersonation of an FBI agent in order to perpetuate the fraud. The situation with Mr. Perez has no relevance to this case and this testimony is only sought to convince the jury that Stone is a liar, therefore he must be guilty of wire fraud and impersonation. This testimony should be excluded.

## CONCLUSION

For the reasons set forth above, Stone respectfully urges this Court to exclude the testimony of Gloria Hernandez, Dena Kimbrell, Stacy Barbara, Leanne Bryan, Kimberly Klodowski, Julie Allen, Donna Oscarson, Adriana Moreno, Amber Clayton, Jonathan Perez and FBI SA Timothy Bell. In the event the Court is inclined to allow one or more of the government's Rule 404(b) witnesses to testify, Stone requests that the government be excluded from mentioning the witnesses in opening statement and further requests a hearing on the issue.

Respectfully submitted,

 */s/ Gregg Gallian*
Gregg Gallian

**GALLIAN FIRM**
3500 Maple Avenue, Suite 720
Dallas, Texas 75219
Telephone: (214) 432-8860
Facsimile: (972) 433-5835
Email: Gregg@GallianDefenseFirm.com
Texas Bar: 24085952


Jaclyn Gallian
**BRYAN CAVE LEIGHTON PAISNER**
2200 Ross Avenue, Suite 4200W
Dallas, Texas 75201
Telephone: (214) 721-8000
Facsimile: (214) 721-8100
Email: jaclyn.gallian@bclplaw.com
Texas Bar: 24092845

**ATTORNEYS FOR WILLIAM ROY STONE, JR.**


### CERTIFICATE OF SERVICE

I certify that on February 14, 2023, I electronically filed this document with the Clerk of Court for the Northern District of Texas, using the electronic case filing (ECF) system of the Court, and thereby served it on the counsel of record in this case.

 */s/ Gregg Gallian*
Gregg Gallian

### CERTIFICATE OF CONFERENCE

I certify that on February 14, 2023, I conferred with AUSA Marcus Busch, and he is opposed to this Motion and the relief sought.

 */s/ Gregg Gallian*
Gregg Gallian