IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | NO. 3:21-CR-236-E |
| v. | |
| WILLIAM ROY STONE, JR (01)<br>JOSEPH EVENTINO DELEON (02) | |

### GOVERNMENT'S RESPONSE TO DEFENDANT STONE'S MOTION TO EXCLUDE EXPERT TESTIMONY AND DEFENDANT DELEON'S MOTION FOR A DAUBERT HEARING

The United States of America (the "government") hereby files this response to defendant Stone's motion to exclude the expert testimony of Dr. Shannon Wolf and defendant DeLeon's motion for a *Daubert* hearing regarding Dr. Shannon Wolf ("defendants' motions"). (Dkt. 118 and 119.)

Defendant Stone's motion argue that the expert testimony of Dr. Shannon Wolf should be excluded because the government's notice of expert witness for Dr. Shannon Wolf is insufficient pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G)(iii). (Dkt. 118 at 2-4.) Stone also asserts that Dr. Wolf is not a proper expert in this case because her expertise is not relevant to the conduct charged, and that because Dr. Wolf has not reviewed or analyzed the specifics of this case her expert opinions cannot be reasonably applied. (Dkt. 118 at 4-6.) Defendant DeLeon's motion argues that Dr. Wolf is not qualified to be an expert and this Court must conduct a *Daubert* hearing to make that determination, and that her experience is irrelevant to this case. (Dkt. 119.) For the reasons stated below, the defendants' motions should be denied.

Government's Response to Defendants' Motions to Exclude
Expert Testimony of Dr. Shannon Wolf —Page 1

1. **The government's notice of expert witness regarding Dr. Shannon Wolf fully complies with Federal Rule of Criminal Procedure 16(a)(1)(G)(iii).**

The government's third notice of expert witness regarding Dr. Shannon Wolf meets the requirements set forth by Federal Rule of Criminal Procedure 16(a)(1)(G)(iii). Federal Rule of Criminal Procedure 16(a)(1)(G)(iii) states that the disclosure for each expert must contain:

- a complete statement of all opinions that the government will elicit from the witness in its case-in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed under (b)(1)(C);
- the bases and reasons for them;
- the witness's qualifications, including a list of all publications authored in the previous 10 years; and
- a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition.

Fed. R. Crim. P. 16(a)(1)(G)(iii). On June 13, 2023, the government filed a third notice of expert witness disclosure regarding Dr. Shannon Wolf. (Dkt. 117.) In its disclosure, the government provided a detailed list of topics Dr. Wolf will testify about as well as opinions the government will elicit from Dr. Wolf, including that the stages of trauma impact the victim's cognitive functioning, decision making, behavioral changes, trust issues, and feelings regarding personal safety; that victims develop and use coping mechanisms while undergoing trauma; that response to acute stress includes fight, flight, freeze, or submit; that perpetrators use specific methods of psychological control and manipulation over their victims to obtain and ensure compliance; that perpetrators often identify potential victims

based on certain characteristics; that victims of trauma or exploitation have difficulty making an outcry for help; that it is common for some victims to believe they love their perpetrator; and that victims commonly have a history or abuse, lack of strong relationships with parents (especially fathers), an unstable home life, lack sense of self, have a deep desire for love, and a weakened capacity to remove themselves from a situation. (Dkt. 117 at 4-5.) Such a statement can only be described as an opinion, and therefore may only be offered into evidence by an expert who is qualified based on his experience, knowledge, skill, training, and education. *See* Fed. R. Evid. 702, Advisory Committee's Note (2000). The government's expert notice as to Dr. Wolf is therefore sufficient to "provide [Stone and DeLeon] with a fair opportunity to test the merit of the expert's testimony through focused cross examination." Fed. R. Crim. P. 16 advisory committee's note to 1993 amendment. *See United States v. Raniere*, No. 18-CR-204-1, 2019 WL 2212639 at *4 (E.D.N.Y. May 21, 2019 (quoting *United States v. Lipscomb*, 539 F.3d 32, 37 (1st Cir. 2008) (stating in response to a defendant's Rule 16 argument, that "there is no dispute that [the defendant] was on notice with respect to the particular conclusions drawn by the witnesses," where the Government provided a similar degree of notice as it did here).

      The notice further explains Dr. Wolf's opinions are based on her education, which includes a Doctorate degree in Psychology and Counseling, a Master's degree in Marriage and Family Counseling, a Master's degree in Education, and a

Bachelor's degree in English; her training and certifications as a Licensed Professional Counselor (L.P.C.), a Licensed Professional Counselor Approved Supervisor (L.P.C.- S), and a certified International Critical Incident Stress Management (CISM) Instructor; her academic experience as the Director of Counseling Programs and Professor of Psychology and Counseling at B.H. Carroll Theological Seminary teaching doctorate and master level courses related to crisis, trauma, and complex trauma as well as counseling victims of trauma, interpersonal violence, exploitation, and human-trafficking; and her extensive clinical experience treating hundreds of victims of trauma, interpersonal violence, exploitation, and human-trafficking as the Director of Counseling at Southcliff Counseling Center since 2003. (Dkt. 117 at 1-2.) The bases for Dr. Wolf's opinions disclosed in the government's expert notice are sufficient. *See Raniere*, 2019 WL 2212639 at *5, (E.D.N.Y. May 21, 2019) (quoting *United States v. Cerna*, No. 08-CR-730, 2010 WL 2347406, at *2 (N.D. Cal. June 8, 2010) (finding "[r]ule 16(a)(1)(G) does not require recitation of the chapter and verse of the experts' opinions, bases and reasons…[n]o rule, statute, or decision necessitates such comprehensive disclosure.")); *See* Lipscomb, 539 F.3d at 38, (1st. Cir. 2008) ("The inferential step necessary to go from the notice provided by the Government to the actual testimony given at trial is not one requiring more notice.")

## 2. Dr. Wolf is qualified to testify as an expert witness.

DeLeon's motion asserts that Dr. Wolf's qualifications as an expert are questionable because "under the heading of 'Professional Experience' dating back to 1997 . . . only one [the Director of Counseling for the Southcliff Christan Counseling Center] involves the treatment of patients." (Dkt. 119 at 2.) This is not only a mischaracterization of Dr. Wolf's professional experience, but also a meritless claim that Dr. Wolf's professional experience does not meet the requirements of an expert witness under *Daubert*. As can be seen in Dr. Wolf's curriculum vitae, attached to the government's third notice of expert disclosure, Dr. Wolf's experience directly working with and treating victims may be limited to employment at one single location, but it spans more than 20 years and encompasses the treatment and counseling of hundred of victims. (Dkt. 117-1 at 2-4.) Additionally, Dr. Wolf has been employed in the world of academia since at least 2007, where she has supervised other counselors providing treatment to patients, created curriculum to teach others how to counsel patients, and served in advisory roles for organizations tasked with providing counseling and treatment services to patients. (Dkt. 117-1 at 2-4.) In arguing that Dr. Wolf's professional experience does not meet the legal standard necessary, DeLeon provides no case law or legal bases in support of this position. Similarly, DeLeon insinuates that Dr. Wolf's doctorate (Ph.D) in Psychology and Counseling does not meet the requisite standard because it is from Southwestern Baptist Theological Seminary, "and not from a university." (Dkt. 119 at 2.) Not only

does DeLeon once again fail to provide legal support for his claim that Dr. Wolf's doctorate degree is not a true doctorate degree, but his assertion is also false. The Southwestern Baptist Theological Seminary, where Dr. Wolf received both her master's degrees as well as her Ph.D., is accredited by the Southern Association of Colleges and Schools Commission on Colleges to award bachelor, master, and doctoral degrees. Therefore, there is no difference between her several degrees (including her doctorate) and the degrees one can obtain from a private or public university.

The legal analysis actually used to determine whether or not a witness may testify as an expert is explained in *Daubert v. Dow Pharmaceuticals*. *United States v. Simmons,* 470 F.3d 1115, 1122 (5th Cir. 2006) (citing *Daubert,* 509 U.S. 579 (1993)). *Daubert* held: when assessing the admissibility of expert testimony, trial courts must determine "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue". *Id.* (quoting *Daubert,* 509 U.S. 579 at 592, (1993)). "[C]onfident that federal judges possess the capacity to undertake this review", *Daubert* nevertheless provided guiding factors it described as neither exhaustive nor definitive. *Id.* Such factors include: (1) whether the theory or technique underlying the expert's testimony has been tested; (2) whether it has been subjected to the rigors of peer review and publication; (3) whether it has any known rate of error and standards for controlling such error; and (4) whether the theory or technique has attained "general acceptance" within the relevant expert community. *Id.* (quoting *Daubert* at 593–594); *see also* FED. R. EVID. 702 (amended on 17 April 2000, consistent with the

Supreme Court's decisions in *Daubert* and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), to state district courts' role in assessing the reliability and helpfulness of expert testimony). Additionally, as a general matter, "[t]o show that expert testimony is reliable ... the government need not satisfy each Daubert factor". *Id.* (quoting *United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004)). Instead, as Daubert emphasized, the trial court's "gatekeeping" function is "a flexible one". *Id.* In fact, the Fifth Circuit Court of Appeals has held expert testimony admissible even though multiple *Daubert* factors were not satisfied. See, e.g., *United States v. Norris*, 217 F.3d 262, 269–71 (5th Cir.2000) (testimony admissible under Daubert even though "no error rate was known" and "no independent validation" of the expert's testing had occurred). And because there are areas of expertise, such as the social sciences in which the research, theories and opinions cannot have the exactness of hard science methodologies, trial judges are given broad discretion to determine "whether Daubert's specific factors are, or are not, reasonable measures of reliability in a particular case." *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 153 (1999); see also *Jenson v. Eveleth Taconite Co*, 130 F.3d 1287, 1297 (8th Cir. 1997). Indeed, in other social-science cases, courts have held expert testimony reliable where it was based on the expert's professional experience, education, training, and observations. *See Simmons*, 470 F.3d at 1123; *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir.2002) (finding expert's testimony reliable under *Daubert* where "based mainly on his personal observations, professional experience, education and training.").

Under the relevant case law, Dr. Wolf's background, education, training, and experience is more than sufficient to meet the requisite standard. Additionally, Dr. Wolf has been deemed qualified to testify as an expert regarding the topics and opinions listed in the government's notice, throughout the United States and the Northern District of Texas. (Dkt. 117 at 3-4).

### 3. Dr. Wolf's areas of expertise are relevant to this case.

The defendants' motions erroneously assert that Dr. Wolf's area of expertise is limited to that of human-trafficking, and therefore is inadmissible and not relevant to this case. (Dkt. 118 at 4-5; Dkt. 119 at 2-3.) Despite the defendants' claims to the contrary, and as this Court is aware from previous filings by the government in this case, this case is not merely a "wire fraud case." While the conduct charged includes the offense of wire fraud, the relevant facts also center around the exploitation and fraud the victim was subjected to, while undergoing daily threats, crisis, and trauma, and living in constant fear of losing her children and her freedom. The abusive and exploitative relationship created by the defendants with the victim, is similar to the dynamics of the relationships seen in sex trafficking cases, sexual exploitation cases, domestic violence cases, and child sexual abuse cases. While the charged conduct may be different, the psychological warfare employed by the perpetrator to control the victim in various manners, and the victims response to this control, are quite similar.

In this case specifically, the defendants employed methods of control, isolation, non-physical force, fraud, and coercion to make the victim provide them financial gain. This

is incredibly similar to sex trafficking cases where perpetrators also use methods of control, isolation, force, fraud, and coercion to make victims engage in sexual acts. In both instances, the end goal for the perpetrator may be slightly different, however the methods used to reach that goal are quite similar. Additionally, there may be psychological coercion, and the development of bonds between the abuser and the victim, which make it difficult for the victim to leave. This concept of trauma bonds and the dynamics of abusive relationships are not specific to nor limited in application to relationships involving sex trafficking. Dr. Wolf's knowledge and understanding of the dynamics of abusive relationships and trauma bonds is grounded in her education, training, and experience in the field of psychology. As such, she can expertly explain the concept to jury, regardless of whether the underlying relationship relates the commission of a crime of sex trafficking, human trafficking, forced labor, or financial exploitation.

In fact, Dr. Wolf has been allowed to testify as an expert regarding the areas of and her opinions related to abusive relationships, coercion and control methods employed by perpetrators, trauma bonds created, and psychological responses to such circumstances, in a non-trafficking case within the Northern District of Texas. In United States v. Olga Sandra Murra, 4:16-CR-478-O, after Daubert hearing regarding Dr. Wolf, Judge O'Connor found her to be qualified to testify regarding the dynamics of abusive relationships and trauma bonds, in an involuntary servitude case, and allowed Dr. Wolf to provide such testimony at trial. Additionally, in another labor trafficking case, *United States v. Alzanki,* the First Circuit Court of Appeals determined that an expert with

similar qualifications, background, training, and experience as Dr. Wolf, was allowed to testify. 54 F.3d 994, 1006 (1st Cir. 1995). In *Alzanki*, the Court allowed Dr. Burgess to testify, based on her general research and her personal interaction with hundreds of victims of sexual abuse, that the victim's behavioral response to the non-sexual abuse administered by the Alzankis was consistent with the behavior of abuse victims generally. *Id.* In the Order denying the defendant's motion to exclude the testimony of Dr. Burgess, the court stated "it seems … that expert testimony on this subject—which the defense was free to contradict—was "reasonably likely" to assist the jury in understanding and assessing the evidence, in that the matter at issue was highly material somewhat technical, and beyond the realm of acquired knowledge normally possessed by lay jurors. *Id.*

Although Dr. Wolf has testified in numerous human-trafficking cases, her testimony is not related to the sexual acts themselves, it is related to the psychological, coercive, abusive, and exploitative nature of relationships created by the perpetrator and the responses by the victims to these bonds. This testimony has not only been deemed admissible in sexually abusive cases, it has also been applicable and admissible to cases which do not involve sexual abuse, and should be admitted here.

4. **Dr. Wolf's testimony is applicable to the facts of this case as required by the Federal Rules of Evidence.**

The defendants' motions claim that Dr. Wolf's testimony is not applicable to this case because she has not treated or interviewed the victim or been provided information

relating to the specific facts of this case. However, this is not the appropriate standard applied to determine the application of an expert's testimony to the particular facts of a case. Further, the defendants' position disregards the reality that in many types of cases experts are allowed to testify as to the subject matter generally, without being specifically involved in the case or opining on the specific facts of the case.

Rule 702 of the Federal Rules of Evidence states, in part, that an expert witness "may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will *help the trier of fact to understand the evidence or to determine a fact in issue.*" Fed. R. Evid. 702. (emphasis added). As the Court is aware from previous filings by the government in this case, the victim was subjected to years-long pervasive threats of going to prison and losing her children if she did not abide by the directives of Stone and DeLeon and submit to their overwhelming control of her life, finances, and relationships with her children, family, and friends. It is anticipated that the victim will testify about her fear, the toll it took on her life, and the actions that she took under the express dictates and controlling conduct of the defendants. In that regard, the testimony of Dr. Wolf will help the jury understand the victim's testimony and conduct, as well as help the jury determine a fact in issue. Additionally, the victim's psychological trauma is relevant to the charged offense, in how the defendants executed the scheme by (1) preying on the victim's past trauma and (2) inducing additional trauma (via threats, isolating the victim from others, and other psychological manipulation) so as to keep the scheme going. Moreover, the trauma the victim suffered as a result of the scheme is

inconsistent with any defense theory that the victim voluntarily gave the money and property to Stone and DeLeon.  Dr. Wolf will testify that these tactics and methods are often used by perpetrators to gain submission and compliance of their victims, to effectuate the scheme or goal at hand.  Additionally, Dr. Wolf will explain how victims of this type of exploitation, abuse, isolation, control, and trauma, commonly react in ways similar to the victim in this case. Dr. Wolf's testimony will inevitably assist the jurors in understanding the topics and opinions set out in the government's expert notice so that they can apply them to the facts presented by the victim in this case and other corroborating evidence.  In majority of the cases Dr. Wolf has been allowed to testify in, many of which were listed in the government's expert notice, Dr. Wolf has not personally treated or examined the victims or defendants, or been privy to the specific facts of each case.

For the above stated reasons, the defendants' motion to exclude the expert testimony of Dr. Wolf should be denied.  Additionally, Dr. Wolf should be allowed to testify in the government's case in chief regarding the topics and opinions set forth in the government third expert notice.

Respectfully submitted,

LEIGHA SIMONTON
UNITED STATES ATTORNEY

/s/ *Jenna D. Rudoff*
JENNA D. RUDOFF
Texas Bar No. 24080343
Special Assistant United States Attorney

**Government's Response to Defendants' Motions to Exclude
Expert Testimony of Dr. Shannon Wolf —Page 12**

1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8674
Facsimile: 214-659-8815
Email: jenna.rudoff@usdoj.gov

**Government's Response to Defendants' Motions to Exclude**
**Expert Testimony of Dr. Shannon Wolf —Page 13**

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 28th 2023, I electronically filed the foregoing document with the clerk for the United States District Court, Northern District of Texas, using the electronic case filing system of the court.  The electronic case filing system will send a "Notice of Electronic Filing" to the attorney of record who has consented in writing to accept this Notice as service of this document by electronic means.

      /s/ *Jenna D. Rudoff*
      JENNA D. RUDOFF
      Special Assistant United States Attorney